THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS R. R. COMPANY VS. THE CITY OF CINCINNATI.

*Railroad Company.—Exclusive appropriation of street.*

Section 3283 R. S., does not confer upon a municipal corporation authority to agree with a railroad company for the exclusive occupation by the latter of its streets.

*Decided January 18, 1890.*

This is a proceeding by the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, a corporation existing under the general railroad law, against the city of Cincinnati, under Section 3283 R. S., for authority to appropriate so much of west Sixth street as is necessary to lay a track along and upon the same, between Price Hill Road and State Avenue in this city.

Sixth street runs east and west and parallel with with the main tracks of the plaintiff company. It is

a street very extensively used by the public, being the direct and principal street connecting with the Lower River Road, and with the travel thereon west to Sedamsville and Riverside and territory beyond, and with the travel east to the city.

On the south side of this street are the tracks of the plaintiff company ; on the north side are houses, and a sidewalk less than three feet in width at certain points. The grade of Sixth street, at a point opposite Price Hill road, is ten feet above the tracks of this company, descending gradually to a point two and one-half feet at State Avenue.

The property sought to be taken is described by metes and bounds in the petition, and it is proposed by this company to take so much of this street, between Price Hill Road and State Avenue, as will leave for public use as a street, a strip thirty-seven feet wide at the west end of the south curb ; and at a point fifty-five feet east of the west end of the north curb, thirty feet ; and at a point three hundred and sixty feet from the center of Price Hill Road, thirty-two feet ; and at State Avenue thirty-three feet. The present width of the road-way from the houses on the north, to the north line of the railroad property, between Price Hill Road and State Avenue, is at one end forty-four and one-half feet, and at the other end, forty-six feet.

To make the portion sought to be taken, available

The C., C., C. & St. L. R. R. Co. vs. The City of Cincinnati.

for railroad purposes, in connection with its main tracks, owing to the grade of the street at this point, and the location of the main tracks of this company, will necessitate a cut of nine feet at certain points, and will thereby absolutely destroy for street purposes, so much of the street proposed to be taken.

The city denies the right of this company to maintain its action, and prays for a dismissal of the petition. To maintain its action, plaintiff relies upon section 3283, R. S. which provides :

"If it be necessary, in the location of any part of "a railroad, to occupy any public road, street, alley, "way, or ground of any kind, or any part thereof, "the municipal or other corporation, or public of- "ficers or authorities, owning or having charge there- "of, and the company, may agree upon the manner, "terms, and conditions upon which the same may "be used or occupied ; and if the parties be unable "to agree thereon, and it be necessary, in the judg- "ment of the directors of such company, to use or "occupy such road, street, alley, way, or ground, "such company may appropriate so much of the "same as may be necessary for the purposes of its "road, in the manner and upon the same terms as is "provided for the appropriation of the property of "individuals ; but every company which lays a track "upon any such street, alley, road, or ground, shall "be responsible for injuries done thereby to private

"or public property lying upon or near to such ground,
"which may be recovered by civil action brought by
"the owner, before the proper court, at any time within
"two years from the completion of such track."

*Harmon, Colston, Goldsmith and Hoadly,* for
plaintiff.

*Horstman, Hadden, Galvin and Van Horne,* for
defendant.

GOEBEL, J.

A railroad is foreign to the legitimate uses of a
highway. While many contrary opinions have been
maintained, and many cases may be cited in support
thereof, the weight of authority may be safely said to
maintain this doctrine. The right to occupy a street
by a railroad, is not conferred under its general au-
thority to make a location ; such right must be
expressly granted.

Here is a strip of land dedicated for public use as
a street. Can a part thereof be taken and appropri-
ated for a different use ? We do not mean to say
that land appropriated to a particular public use, is
withdrawn from liability to be taken by legislative
authority, in the exercise of the power of eminent
domain, for another public use. But we maintain
that a subsequent grant cannot be construed to
authorize the destruction or subversion of the former
use, unless such appears by express words, or by

necessary implication, to be the legislative intent. *Little Miami & Col. & Xenia R. R. Co. vs. City of Dayton*, 23, O. S. 510.

The railroad company, in that case, sought to restrain the City of Dayton from extending Bainbridge street across the tracks of the railroad alleging, among other reasons, that the tract of land across which it was proposed to extend said street, had been appropriated for public use, namely, for railroad purposes; and the court held that the land might, in such case, be subjected to an additional use, if the former use was not thereby defeated.

Applying now by analogy, this ruling to the case at bar, it would follow that if the former use of this street is not defeated by the subsequent use of this railroad, then the power of appropriation by the railroad is complete.

Applying this ruling also, in construing section 3283 R. S., it would deny the power of the railroad to occupy a street, to the absolute destruction of its former use, or the right of an absolute and exclusive use.

There is power in the legislature to grant such authority. The right of eminent domain is an inseparable incident of sovereignty, and its exercise was delegated by the sovereign power to the general assembly, in the general grant of legislative authority. It may be exercised whenever necessary to the pub-

lic welfare. It rests upon the public necessity—subordinates the rights of one to the welfare of all. *Giesy vs. C. W. & X. R. R. Co.*, 4 O. S. 308.

The streets of cities are public highways, and as such, under the control of the state alone. The control of city streets may be properly delegated to the city authorities, with direction to impose conditions on the use of the street. *Covington Street R. R. vs. Covington*, 9 *Bush.*, 127. Such power is not in the city, unless expressly delegated. *Pollard vs. Trustee*, 48 Cal. 490. *Davis vs. Mayor New York*, 14 N. Y., 506.

As streets are under the paramount and primary control of the legislature, and as all municipal powers are derived from the legislature, it follows that the authority of municipalities over streets and the uses to which such streets may be put, depend entirely upon legislative enactments.

The question here is, does section 3283 R. S., confer the right contended for by the plaintiff? We are cited by counsel for the railroad, to the case of *Arbenz vs. Wheeling & H. R. R. Co.*, 10 South Eastern Reporter, 14, decided September 13, 1889, by the Supreme Court of Appeals of West Virginia.

Under the statute of that State, the defendant had the right to construct its railroad across, along or upon any street, highway, road or turnpike, but

such corporation "shall restore the street, highway, road or turnpike to its former state, or to such state as not necessarily to have impaired its usefulness."

The court held under this statute, that a railroad company with the assent of the municipal authorities, may construct and operate its railroad along a public street of a city, in a cut or excavation, below the common level of the remaining portion of the street, in such manner as will appropriate a portion of the street to the exclusive use of the railroad company, provided such excavation does not occupy the entire street, or such considerable portion thereof as would substantially prevent the use of the street by the general public; and provided further, that it does not necessarily impair the usefulness of the street as a highway for the general public."

In giving a construction to the words that the street shall be restored "to its former state or to such state as not necessarily to have impaired its usefulness," the court said "if the legislature intended to authorize the construction of a railroad along or upon such street, in such manner that it would be impracticable to restore the street to its former state, unless such was the purpose, the alternative provision limiting the duty of restoring the street, would be without meaning and effect. In such case the requirement is simply that there shall be no unnecessary impairment of the usefulness of the street. Any

276        GOEBEL'S PROBATE REPORTS.

The C , C., C. & St. L. R. R. Co. vs. The City of Cincinnati.

necessary impairment, whether much or little, which is required for the proper construction of the railroad, is authorized by the statute."

It was also contended in that case that by the words "across, along or upon" in the statute, the legislature intended to limit and restrict the grant, so that a railroad should be upon the surface, at a common level with the rest of the street, in order that the public may use the entire street at all times except when trains are passing; and that this restriction was designed to prohibit the railroad from the exclusive occupation of any part of the street.

The court said the word "upon" in the statute does not necessarily mean upon the common grade of a street, and that the words "upon and along" must be construed with reference to the context and the subject in controversy; they must be understood to mean along in the street, at, above or below the common level of the existing or changed surface of the street, accordingly as the particular facts and circumstances may require.

But the court expressly held, that the statute did not authorize the occupancy by a railroad, for its exclusive use of the entire street, nor of such considerable portion of it as would substantially prevent the use of it by the general public; but that the taking of two feet in the manner proposed, was not an unnecessary or unreasonable appropriation or use of the street.

If the municipalities hold the streets in a city in trust for the general public, and can exercise only such control as the legislature may give, then it would seem that the authority so granted can not be further exercised than the statute would justify.

But it is claimed that when the legislature authorized a municipality to agree with a railroad upon the manner, terms and conditions by which such railroad should occupy its streets, this was a grant of power to agree upon an occupancy, that would be exclusive of all other uses, if the location of the railroad required such adaptation of the surface of the street; and counsel quote this language : " Whatever is fairly within the contemplation of a grant, whether voluntary or forced, and necessary to its beneficial enjoyment, is within the legal operation of the instrument or proceeding by which it is effected." *Street Railway vs. Cumminsville*, 14 O. S. 544.

There can be no doubt that, if the city had power to make the grant, the railroad in constructing and operating its road, may exercise any and all rights fairly contemplated by such permission. But it does not follow that when the legislature granted authority to the municipality to agree with a railroad upon the "manner, terms and conditions" in occupying a street, it intended to confer authority upon the municipality either expressly or impliedly to agree upon the destruction for street purposes, of a public street or

any part thereof.    This would do violence to the grant.

The very language of. the statute rebuts the presumption contended for. To agree upon the " manner terms and conditions" to be used and occupied implies a joint and concurrent use.   What is the meaning of the phrase " upon the manner, terms and conditions to be used and occupied?"   If it means what counsel say it means, then the authorities may agree with the railroad upon the manner, terms and conditions by which such street shall be destroyed ; that would be the logical effect of such construction when applied to a case of this kind.

" Manner " in contemplation of this statute, means the method, or mode, tracks are laid ; "terms," the boundary, limit, or extent of the grant ; "conditions," stipulations precedent to the enjoyment of the grant. This must be the true interpretation of these words, considered in connection with the words "to be used and occupied."

Section 3283 further provides, " if the parties be unable to agree thereon,    *    *    *    such company may appropriate so much of the same as may be necessary for the purpose of its road, in the manner and upon the same terms as is provided for the appropriation of the property of individuals."

It is also urged that this confers the power con-

tended for.   If this be so, then this part of section 3283 must be treated as a separate and independent section, conferring upon the courts the power that was not conferred upon the municipality.

We do not think that it will bear such construction. The evident intention of the legislature is to provide a remedy, when there is a failure to agree with the municipality.   The authority was not alone to be invested in the municipality, which might, for arbitrary reasons, impede public improvements and defeat the objects fairly contemplated by the act, and hence a remedy was provided for, to obviate this.

The clause the "manner and upon the same terms as is provided for the appropriation of the property of individuals" must be construed with reference to the subject in controversy, and when so construed, means to provide the mode of procedure, the right of trial by jury, to examine and cross examine witnesses and give to the parties all the rights and privileges incident to a proceeding for the condemnation of private property.

We doubt whether the jury could do more than fix compensation, leaving for the court to fix the manner and terms by which such railroad may occupy such street.

Our attention is called to the word "appropriate" and it is claimed that it signifies the right to take to

one's self, to the exclusion of others, the particular thing. We have no fault to find with this definition, but there can be no right to take in a condemnation proceeding, to the exclusion of others, " property " as in the case of an individual, until compensation has been made, and, in this case, until compensation has been made and the manner and terms prescribed. Until then, there can be no appropriation. The words " may appropriate " etc., when considered in connection with the words " in the manner and upon the same terms as is provided for the appropriation of the property of individuals," prescribe the mode by which property of the character contemplated by the act may be appropriated, and can have no greater meaning than the words themselves imply, when limited to the conditions precedent to an appropriation of such property, to-wit; that compensation must first be made.

We have not been unmindful of the importance of this case, and have endeavored to give our views as they presented themselves to us, upon the points made by counsel. Our conclusion is, that section 3283 confers no power upon the municipality to agree with a railroad upon manner, terms and conditions upon which such railroad may use or occupy, in whole or in part, any open, public street, when such use would be an absolute and exclusive one to such railroad.

It is not sought in this case, to take the entire street between the points indicated. We do not

think however, that the question, how much it is proposed to take, can be considered. So much as is proposed to be taken, will be absclutely destroyed for street purposes. If the entire street cannot be taken for the reason we have given, then such reason must apply with equal force, when it is proposed to take any part of a street.

We are further of the opinion that section 3283 confers no power upon the court or jury in a proceeding instituted under said section, other than is conferred upon the municipality.

There being therefore, no authority to grant the prayer of plaintiff's petition, the same will be dismissed.